Your Honor, this case presents a straightforward question. Whether a federal employee with over 40 years of exemplary service who was the only African American on a planning committee and the only one removed from it who was then suspended without due process, issued a letter of reprimand based on false accusations, stripped of her job responsibilities, subjected to workplace requirements not imposed on her non-African American colleagues, and effectively demoted. Whether that employee has alleged facts sufficient to survive a motion to dismiss at the pleading stage. The district court answered no. But in doing so, the district court committed four errors. First, it dismissed Dr. Credle's retaliation claim on the mistaken belief that she failed to exhaust administrative remedies, ignoring that the factual allegations in the EEOC charge that would have naturally triggered a retaliation investigation was sufficient. What would have naturally alerted that there was an EEOC charge is if the retaliation box had been checked, and it was not, was it? It was not, Your Honor. It was not on the EEOC charge. It was checked on the equivalent charge filed before the Virginia Commission. And I understand that you're saying since it was checked in the Virginia case that we should credit that in the EEOC case? No, Your Honor. In fact, that argument I will concede is more of a red herring. It does not matter. What matters is ‑‑ So you're now conceding that something you argued in the brief is a red herring? It's not, Your Honor. Let me step back. It's not that it's a red herring. I should not have said that. I understand. What's more important, that is important, but what's more important ‑‑ Well, no. See, now you're back to what's important. Okay. It's either relevant or it's not. And if it's relevant to any degree, why is it relevant to any degree at all? Because, Your Honor, that does place the respondent on notice. Only if the Attorney General notified them and there's no allegations in the record that they did. And also, I mean, the thing that's supposed to put the employer on notice is the EEOC charge. That's like the whole structure of Title VII. Yes, Your Honor. And as part of that, what's more important is the actual particulars in the EEOC charge. Okay. That is ‑‑ So what do you think in the EEOC charge comes closest to alleging a retaliation claim? Is the word retaliation in the EEOC charge somewhere? No, Your Honor. And, again, this Court has made clear that the EEOC charge is not supposed to be a trip wire for ‑‑ Well, there's a box. You check it. Retaliation. That's no trip wire. It's a box that you check. Was she represented by counsel? She was, Your Honor. And if you say ‑‑ Okay, so I agree it's ‑‑ Also, if you somehow miss the box and in your factual narrative you say, I complained about them doing something illegal and then they fired me, I think we'd all agree that that would be enough. So what in the body of the charge do you think comes closest to saying, I complained about discrimination and then they fired me because I complained about discrimination? Yes, Your Honor. And it is in there, and I'll point the Court to the Joint Appendix 33, which is the start of the Attachment A. Dr. Kretl specifically says in the charge that she complained ‑‑ Sorry, what page of the JR are we on? 33. 33? Okay, thank you. Yes, Your Honor. It's at the bottom. Okay. It starts at the bottom of that. She complains to a couple of people. One, she complains to ‑‑ Her former student. Yes, Your Honor. That's the first. But on the next page ‑‑ And, well, if we're going to do this, complained to her former student that she felt her removal was because, and what follows are because she complained about discrimination, that would be obviously a retaliation claim. Because she is African American, which is not a retaliation claim, that's a straight up discrimination claim. Oh, no, Your Honor. Okay, I'm sorry. Let me back up. That is the protected activity. Because what happens that same day that she speaks to the student, as alleged in the charge and in the complaint, in the Minda complaint, what happens that same day at 8 p.m. that night, she receives an email that she's suspended. Because they had bugged her office and overheard ‑‑ I'm just trying to understand what the allegation is. Because they bugged her office and overheard her say that to her former student or something? As alleged in the Minda complaint, Your Honor, Dr. Credle alleges that the dean's assistant overheard her speaking with the student and then reported that to the dean. Okay. It came within ‑‑ Okay. But let's, again, let's focus on the EEOC charge again. Where does she say they did something bad to me because I complained about them doing illegal things? Your Honor, she doesn't specifically say that. Okay. What's the closest where she comes to saying that? The closest, Your Honor, that she comes to saying that is in that narrative as she's going through. She specifically says, I did this. I reported this to the student. And then she does say also in that same, the day before, she tried to speak with a number of HR representatives. In fact, she puts ‑‑ there's a provision of her text message that she sends to one of the HR representatives that's out of the office. That next day she talks to the student. That same evening, as alleged, she gets suspended and placed on administrative leave. And so your claim is that based on reading that, a reasonable investigator at the EEOC or a reasonable employer would understand that despite the fact that we didn't check the retaliation box, but based on this narrative, they're supposed to understand she's also alleging unlawful retaliation. Yes, Your Honor. Yes. And I would say this. A reasonable inference drawn from those facts at the pleading stage. This may be completely different at the summary judgment stage, but at the pleading stage, with all reasonable inference drawn from the facts in favor of Dr. Credo, I would say that that would be a reasonable inference that can be drawn because she alleges the specific actions in this court has made clear. And remind me again how you would distinguish the decision that we wrote that had facts kind of similar to this and we said you hadn't exhausted. That's Moody, is it? Oh, yes, Your Honor. So this case is different. So if we were to write an opinion ruling for you, this case is different from that case because? Because Moody did not actually, in the particulars, allege anything that an investigator would have been able to reasonably glean could have constituted retaliation. So we'd have to turn on the specific differences in the factual narratives of the two cases. Absolutely. Okay, that's all. Yep, absolutely. So on the pleading, can I take you to your other two claims? Yes. I'd like you to respond to some things that the bottom side brief says. Let's posit for the sake of argument that at least I am skeptical of some of the district court's conclusions that certain things aren't protected, sorry, aren't employment practices. But they make a whole argument in their bottom side brief that who cares about any of that because you haven't adequately alleged discrimination because of race and thus failed Twombly and Iqbal. So because you didn't file a reply brief, I would like to know your response to why are the allegations of this complaint sufficient under Twombly and Iqbal? With respect to the protected activity for retaliation? No, no, no. I'm sorry. I'm turning to discrimination in hostile work environment. Because in both, I have serious concerns about the adequacy of the allegations that any of this was because of race. Understood, Your Honor. So with respect to, let's, so I'll skip the adverse action and go right to causation for the inference of discrimination based on race. There are a number of things. In the amended complaint, and again, accepting the allegations is true with all reasonable inferences drawn therefrom at this stage. Dr. Credo alleged in Joint Appendix 10, Paragraph 23 of the amended complaint that she was the only African-American on the conference committee. She was removed from the conference committee despite the fact that she alleges in the complaint other members on that committee had engaged in similar misconduct and not faced any situations. But more importantly, she had permission, this whole removal from the conference committee. And which paragraph is the allegation of similar misconduct and not facing any of the same treatment? Your Honor, that is Paragraph 22, same page of the Joint Appendix. Okay, but how is the first sentence of that allegation not facially insufficient under Twombly-Nickball? Because I don't know who these other people are. I don't know what the complaint means when it says not performing satisfactorily. And, Your Honor, I would say that this court has made clear on a number of times, specifically when it comes to civil rights complaints. And I'll give you the citation. This court recently, three years ago in Starbuck, said civil rights cases should not be dismissed too early, quote, unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged. Okay, well, that is just, I don't know what you're quoting there, because that is flat out inconsistent with Twombly-Nickball. Your Honor, that is Starbuck v. Williamsburg James City School Board, 28F4-529, Fourth Circuit, 2022. And it's quoting Edwards v. City of Greensboro. We sometimes have a bad habit to continue quoting pre-Twombly, pre-Nickball cases. Understood, Your Honor. Your Honor, factual specificity at the pleading stage. Well, I think I understand Judge Hyten's. That's not in your brief, is it? Starbuck is not, Your Honor. Okay. Can you provide a copy to the court and to opposing counsel at some point? Of the Starbuck decision, Your Honor? Yeah, if you're going to argue cases, the court and opposing counsel needs to have those.  Okay, go ahead. Ultimately, Your Honors, with respect to the causation for discrimination, the inference of discrimination, the first thing that I would argue is that, and this court knows that the plaintiff does not have to set forth facts to allege a prima facie case. But they still need to allege- They have to get beyond the speculative level. Yes, Your Honor. Yes, Your Honor. And I would say- And for that, you point us to paragraphs 22 and 23 on JA-10? That's just one area. I'm going to give you some others right now. So, yes, Your Honor, JA-10, 23, 22. Paragraph 22, paragraph 24. And then Dr. Credill also alleges- Wait, wait, wait. I'm sorry. If we're going to go through this. How does 24 show because of? It just says Dr. Credill emailed someone. It identifies that person's race. And then it says that she was expressing concern. I don't know how that actually gets you anywhere on Twombly, Iqbal, because of. 24, did I- That's the paragraph I thought you just cited. Yes, Your Honor. How does that show because of race? Your Honor, it's not. It's not. I mean, that in isolation is not. I'm- Okay, sure. For the totality of the-  But you're absolutely right. In isolation, that does nothing without being compared to the other provisions. She also alleges that non-African Americans were not subjected to the five-day in-office requirement. That's in Joint Appendix 16, paragraph 64 of the amended complaint. She also alleges a specific comparator, Elizabeth Garvey, engaged in the same conduct that Dr. Credill was disciplined for, rudeness and unprofessional behavior, but was not disciplined and was, in fact, promoted. And that's in Joint Appendix 15 to 16. But doesn't the complaint tell me that these two people had different supervisors? How can that person be an appropriate comparator if the complaint itself says the supervisors of these people are different? Yes, Your Honor. Ordinarily, the comparator analysis requires ordinarily when you are comparing that the individuals, if they're going to be similar- Right, because the theory there is if the same person treats different people differently and one of the only things different between them is the protected characteristic, that supports an inference that maybe it's because- But if they're different supervisors, I don't know how you have that inference at all. Yes, Your Honor. My understanding is that the discipline that- department, not her first-line supervisor. The crux of this comparator analysis is that HR department was informed of the same conduct by Dr. Credill's colleague and took no action. In fact, she was promoted. But yes, Your Honor. And I will say that the comparator for the similar-situated analysis is much more- Am I out of time? I think it means you're going into your rebuttal time. Yes. Oh. So you can wind up and you have some time in rebuttal. Okay. That's all right. It's confusing because the clock starts to go up and people don't notice. Sorry. No. The similar-situated comparator analysis is more pertinent at the summary judgment stage, not at the pleading stage. I think there are sufficient facts here at the pleading stage. Again, for Dr. Credill's case to move forward, whether it pans out at summary judgment, that's a whole different burden of proof and a whole different standard. But at this pleading stage, I think she's alleged sufficient facts. And I would ask that I reserve, unless Your Honors have any additional questions, I ask that I reserve the remaining of my time, whatever that is. Yeah, you do have time. Thank you. Thank you. All right. So we'll hear from Ms. Baker now. Good morning, and may it please the Court. Meredith Baker, Deputy Solicitor General on behalf of the Virginia Community College System. With me at counsel table is Principal Deputy Solicitor General Graham Bryant. Dr. Credill's complaint fails to raise any claim to relief that is plausible. At the outset, Dr. Credill does not allege any facts for any of her claims showing that VCCS took action because of an improper discriminatory or retaliatory motive, rather than because of Dr. Credill's own escalation of a workplace dispute. And most of her factual allegations do not show actionable harm as to her discrimination, hostile work environment, or retaliation claims. Therefore, this Court should affirm. So let's just do this part up front. Can we talk about footnote four of your brief? So in footnote four of your brief, you present the district court as dismissing for failure to exhaust as subject matter jurisdiction, as something the district court just went and did. And you very candidly, I appreciate this, you're like, that's actually wrong because it's not subject matter jurisdictional. But the way you phrased it in your brief makes it sound like the district court just went off and did something weird. So then I pulled your motion, and you moved to dismiss for lack of subject matter jurisdiction for failure to exhaust. Can you please tell me that this has been addressed because the Supreme Court has squarely held its, why are people still filing motions to dismiss for lack of exhaustion for lack of subject matter jurisdiction? I am not aware of why that motion was filed in that, framed that way. But apparently, I do not believe that. Can you represent that your office is no longer filing motions to dismiss for lack of subject matter jurisdiction for failure to exhaust? I cannot represent what other attorneys are doing in my office. I would suggest that maybe the employment attorneys need to be told that is not a motion to dismiss for subject matter jurisdiction because there's literally square holdings of the Supreme Court and this Court both saying that. Yes, Your Honor. Okay. I didn't want to. So, and now can we, I noticed also that in your initial presentation, you're not so much defending the district court's adverse employment action decisions. We are, Your Honor. Well, you say in your brief that some of them are right. Which ones of them don't you think are right? Well, there were two adverse employment decisions that the district court. I just noticed that your brief is very careful to say that you think some of those things were right, but I don't know if you ever actually say that you think all of the district court's conclusions about what were and were not adverse employment actions were right. The district court ruled against us on two of the adverse employment actions. Oh, so you think the ones that you, okay. So you think the ones that you won were all right? Yes, Your Honor. How in the world is a letter of reprimand in someone's employee file not an adverse employment action? That seems bananas to me. Because it doesn't actually, it did not actually affect the term. Why does an employer write a letter and put it in someone's personal file if they don't think it will make a difference in the real world? Your Honor, the letter itself was. . . What is the purpose of the letter? To warn the employee to. . . And to document that you've warned the employee, right? That's why you put it in the file. I just don't understand how you can give someone what's like a very official language, like you have been reprimanded by your employer and that. . . It just strikes me as a world in which we've concluded that's not an adverse employment action. It's a world we've entered into some topsy-turvy world that I don't understand. Because I don't understand why an employer puts an official letter in someone's file if they don't intend for it to do something. Your Honor, the employment letter doesn't satisfy the adverse employment action because of the fact that it doesn't. . . It didn't actually affect the terms or conditions of employment. And if it had, then that could potentially be an adverse action. Well, let's talk about one that I think did affect the terms and conditions of employment. How is the additional requirement that she teach that extra class not an adverse action, employment action, based on the way you just described it? That one is not an adverse. . . Well, under Muldrow, there has to be some disadvantageous change respecting an identifiable term or condition of employment. So when she was asked to teach the class, she didn't actually teach the class. So there was no change. Well, even though she ultimately. . . There was no change because she didn't ultimately teach the class, not because the employer didn't seek to have her teach the class. The employer. . . The employer took action, right? And the action was you have to teach this extra class, right? She was asked to teach the class, but she refused, and she was not disciplined for refusing. There's no allegation that she suffered any consequences from just refusing to teach the class. She was asked to teach the class. Yes. If you feel like teaching the class, you can. Is that what they said? That was not what they said, but. . . What did they say? They just. . . I mean, that she was told she needed to teach this class. But the reality of it. Okay, so being told that you need to teach an additional class, how does that not change the terms and conditions of her employment? Is it just because she ultimately didn't do it? Yes, Your Honor. So if she had done it, then it would have been an adverse employment action? Potentially it could have been. But since she didn't teach it, there was no. . . Well, if you tell somebody that they're required to take on additional job duties, how does that not change the terms or conditions of your employment? Well, the conditions or terms are not actually changed until those duties are imposed or the person actually starts performing the duties. Right. So if she did it, then you would agree that that was an adverse employment action? That would. . . Well, there still has to be a showing of harm. Wait, hold on. That would be a factual question. It seems like it can't be right because if, say, for example, that I was a remote worker because of a reasonable accommodation under the ADA or something like that, and then my employer said, effective immediately, you have to come into work every day. And I say, I really can't do that. And they say, but you have to. And I say, but you can't. And then I quit. Under your view, I've not suffered an adverse employment action because I resisted my employer's statement that I have to come into work every day? That would probably fall under the question of whether the case law about when someone's conditions of work are so bad that they're effectively terminated without being fired. That's a different question because here she continued working. She just didn't teach the class. Okay, so let's take another one. Right, the student development course. Sorry, I lost my train of thought. Please continue. Oh, sorry, the bonus. How do I know her bonus was discretionary? Other than what I will say is a glib Seventh Circuit decision that just asserts that no one ever has a right to a bonus ever without anything. How do I know this bonus is discretionary other than I'm supposed to adopt a rule that bonuses, that courts can say as a matter of law that bonuses are always discretionary? If there are facts alleged showing that it was contractually required or she was otherwise entitled to it, but there are, it's a very, it's a conclusive redistriction that other people got a bonus, not even that she would have been entitled to it if she actually had been. No, it actually says eligibility for bonuses, right? It says it made her ineligible to get a bonus. Why isn't eligibility for bonuses a term or condition of employment? I would think it's quite a material term or condition of employment whether I'm eligible to receive a bonus or not. I believe she said that she had been. I'm looking at her complaint. It says eligibility for bonuses. She, with no allegation that she actually would have received that bonus, that's still insufficient to, and the bonus itself was not the alleged harm. The administrative leave was the alleged harm, which also didn't affect her employment because it was predisciplinary. It was with pay. It was not actually discipline. But she said because I was on administrative leave, I was ineligible for a bonus. Why isn't that a term or condition of employment? Because the terms or conditions of employment would not include something that wasn't contractually required, like pay that wasn't contractually required. Employers do all kinds of things that are not contractually required to do, the changing of which would still probably be a term or condition of employment, right? Yes. If I told one of my law clerks they have to work in, like, the janitorial closet effective immediately, I would think that would be a term or condition of employment even though I assure you that they don't have any right to the fairly nice offices they currently have. Yes, Your Honor. So what's the difference between that situation and this one? Well, the bonus, the allegation of the bonus is there's just no, there's no allegation that she actually would have received the bonus but for being on leave and showing how she was entitled to it. But regardless, briefly about the work plan, the employee work plan, that allegation also was failed, primarily because there's just not sufficient facts to show how it changed, harmed her, how it changed her terms or conditions of employment. Just effectively a conclusion that she was demoted without really explaining how that is the case. But again, all of these adverse employment action questions are secondary to the primary issue that she just doesn't have facts showing discrimination. And under this Court's holding in McCleary-Evans being a Coleman, conclusory allegations that race was a factor in an employment decision are just insufficient. And being this Court said that being aware of no alternative explanation and guessing that conduct is racially motivated does not amount to pleading actual facts to support a claim of racial discrimination. And in McCleary-Evans, for instance, this Court held that, you know, just simply alleging that hiring personnel had predetermined they would hire someone of a particular race was not sufficient. It was just a conclusory allegation. Saying I think this happened to me because is not sufficient is basically the point.  And moving to the hostile work environment claim, the elements of that claim are the unwelcome conduct based on plaintiff's race, which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment and that is imputable to the employer. This claim fails here at least at steps two and three, the based on plaintiff's race and then the sufficiently severe or pervasive. First, as to the based on plaintiff's race, again, there are just no allegations showing a racially discriminatory motive for the same reasons that the discrimination claim fails. But also, even beyond that, the hostile work environment claim fails because there's no conduct that's sufficiently severe or pervasive under this Court's precedent to establish a hostile work environment. Under Holloway, it must be objectively hostile. And then this Court's precedents in DeCoster and Holloway both demonstrated environments that were more hostile than what we have here and this Court held that that was insufficient. In DeCoster, their supervisor humiliated the plaintiff by singling her out in front of her colleagues, accusing her of failing in her position, speaking to her with contempt, treating her with disdain, blaming her for issues that were not her fault, threatening to fire her, placing her in a performance plan. And basically, the Court said that, you know, the allegations centered on a difficult working relationship and criticisms of work, but that was not a hostile environment. And similar to what we have here in terms of there may be a difficult working relationship and some criticism, that doesn't amount to a hostile environment. Similarly, in Holloway, the plaintiff's supervisor refused to communicate with the plaintiff, surveyed employees about the plaintiff's leadership and whereabouts, criticized the plaintiff's leadership, yelled at the plaintiff, slammed documents onto a table, required the plaintiff to address the supervisor as served when other people were not required to, and all of that and more did not amount to a hostile work environment. So the facts here just do not amount to a hostile work environment. As to the retaliation claim, at the outset there was no exhaustion because the box was not checked and also because the allegations within the factual section do not give rise to an investigation of retaliation, especially because even assuming some of that could have been protected conduct, there's no allegation that those individuals who knew about the potentially protected conduct had anything to do with the decisions that were made later. This is largely just for my edification. The form that she filed with your office, what was the purpose of that form and what was done with that form? I understand your point. I understand your argument that that is not relevant to whether she exhausted her Title VII claims, but just it's been mentioned repeatedly in the briefs and I'm just curious. Well, the record doesn't show specifically what was done with that form. Under Virginia law, what is the purpose of that form? I guess that presumably is something we don't need to go into the record for. It can be accepted for investigation, and then if it's accepted for investigation, the employer would be notified. So there could be like a parallel state investigation. And for the same reasons that the charge doesn't show a retaliation claim, even if there was exhaustion, this claim would fail in the merits because the allegations do not show a retaliation claim. First, there's no protected activity because there's no allegation that she actually told the employer versus the student. That she was being discriminated against. There was no causation because even the allegations, assuming that Dean Raman learned of this statement she made to the student, there's no allegation that Dean Raman was even involved in any of the adverse, potentially adverse employment actions. And under this Court's holding in Dell and Roberts, the decision maker must know about the protected conduct in order for it to count. And then there's also no materially adverse actions because the standard for that is that the action has to have, well might have dissuaded a reasonable worker from making or supporting a charge of discrimination under Burlington Northern, which did not change under Muldrow. And here there just weren't sufficient materially adverse actions for that. So Dr. Creedle's complaint is just lacking in the factual allegations to give rise to a plausible entitlement to relief. The District Court correctly recognized this and we ask this Court to affirm. Thank you for your argument. Thank you. Mr. Hallett, you do have rebuttal time.  I want to first go back a little bit and then I'll address quickly my colleague's comments. This Court should be aware of a recent decision that was issued in August of this year that was interpreting the Muldrow, the unanimous decision by the Supreme Court in Muldrow last year. And that's the case of, and I'm more than happy to also provide this, Your Honor. Right, because you know I'm looking in your brief and it's not in there. And if it's a recent decision, you just file a 28-J letter to the court, Rule 28-J, to the court and to opposing counsel with these cases that have come up since you filed your brief. Thank you, Your Honor. This case in August of this year, Herkert BISIGNANO 151F4-157. Your Honors, in that case, this Court expressly applied the Supreme Court's Muldrow's standard and clarified that under Muldrow, a plaintiff need not show, quote, some disadvantaged change, quote, in employment. I mean, need only show a disadvantaged change in employment, not a significant change. The loss of supervisor duties or authority, even without a change in benefit or pay, can constitute an adverse employment action. The Court abrogated prior Fourth Circuit decisions like James v. Booz, Allen, and Hamilton that required significant detrimental effect. Here, applying the facts or applying the law to Dr. Prettel's claims, Dr. Prettel points to the suspension and administrative leave and her administrative complaint as an adverse action, the letter reprimand, the amendment to the employee work profile, and the requirement to teach the student development course. And I will just note for the requirement to teach the student development course, the analogy that was raised, I thought was a good one, and I'll just add one additional one. If the fact that she didn't ultimately teach the course, although she alleges that she suffered a panic attack and some other harm as a result of being required to teach the course, it would make a notice of proposed termination superfluous if a termination didn't actually happen. And a notice of proposed termination is definitively an adverse employment action, even if the termination doesn't ultimately occur. I will also note for the inferences of discrimination, Dr. Prettel alleges that she was suspended the same day she expressed her belief that her removal was racially motivated. Now, I know that that was expressly in the amended complaint alleged to a student, but the allegations in the complaint do say that the dean's assistant specifically overheard that conversation. Because you agree there's a whole bunch of Fourth Circuit decisions that say the plaintiff's statement, I believe that I was discriminated against based on a protected ground is not – it doesn't even raise an – if I think about the language of Twombly where it says that's just an unadorned, the defendant acted illegally allegation. In the same way that it says the defendant negligently hit me with his car. The defendant discriminated against me based on race is the equivalent of the defendant negligently hit me with his car. It doesn't raise any inference at all. Your Honor, with respect to discrimination, I would agree with you. With respect to retaliation, I respectfully disagree. The Fourth Circuit has said there are no magic words that need to be spoken.  You can – now, you can't say – what you can't say for it is you can't just say I've been discriminated against. That's not a – What you also can't say is I believe they fired me because I complained. Like, as in all – now, because you have to allege the facts that say I complained. I have to allege the facts that say when did I complain, when did they fire me. You can't just say I believe they fired me because I complained. There was one more part to that that we allege that is key to this because you're absolutely right, Your Honor. She says because she's African-American. As soon as she indicates a protected status for that, for retaliation, that rises enough to find a protected activity. That is not a formal complaint or an informal complaint as long as you allege discrimination, hostile work environment because of a protected status. No, no. I mean I think if she went into her supervisor's office and said I believe I was removed because I was black, that would be protected activity. I don't understand how having a conversation with a former student in the office where you say that is protected activity. Well, and Your Honor, I think one of the – I think the biggest things today here is that there seems to be a lot of facts that have not been developed and could not be developed in this case without discovery. She didn't complain to any administrative person there at the school about discrimination, right? It was just to the student. She didn't use – Your Honor, she did complain. She didn't use the magic words. She complained – she sent a text message and it's in the joint appendix the day before she spoke to the student. So this is June 9th. And the text message is in the actual – the language is in there. There are no – she did not use the words that – she didn't go as far as what she said with the student that I was discriminated against because I'm African American. It does allege in the complaint that – and in her charge that she made an effort to reach out to a number of HR representatives to discuss the matter and was unable to get in contact with anyone that day. And then she was suspended and placed on administrative leave the next day. Prohibited from – as part of the terms for that, she was prohibited – oh, I can't see this. That's why. She was prohibited from coming back. I'm sorry, Your Honors. I'm out of time. That's all right. Yeah, it's red again. Let me – do you have any more questions? I do not. All right. Thank you for your argument. Thank you, Your Honor. We're going to come down and greet counsel and then adjourn court. The court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Stephanie D. Thacker, Toby J. Heytens, Gina M. Groh